## A04A1892. BYRON v. THE STATE.
### (604 SE2d 608)

BLACKBURN, Presiding Judge.

Following a bench trial, Derrick Byron was found guilty but mentally ill of voluntary manslaughter and sentenced to 20 years to serve 15. He appeals, arguing that the sentence was too harsh in light

---

[8] *Gibson v. Decatur Fed. S & L Assn.*, 235 Ga. App. 160, 166 (3) (508 SE2d 788) (1998).

of his mental illness. Because the sentence was within the range allowed for this crime, we affirm.

Construed in favor of the judgment, the evidence shows that in retaliation for a 12-year-old boy's throwing an egg at him, 14-year-old Byron shot and killed the boy. Byron was indicted for murder, felony murder, and aggravated assault. At trial, expert testimony showed that Byron had a long history of mental illness but that he was aware of his actions. The court found him guilty but mentally ill of the lesser charge of voluntary manslaughter on the first two counts and acquitted him on the aggravated assault count.

During the sentencing hearing, Byron put on expert testimony about alternative sentences for the mentally ill, urging that prison confinement would not suit his treatment needs. The record also showed, however, that during his three years in prison prior to sentencing, Byron had progressed substantially. In compliance with OCGA § 17-7-131 (g) (1), the court sentenced Byron in the same manner as a defendant found guilty of voluntary manslaughter, sentencing him to 20 years to serve 15 in confinement.[1] The court further ordered that he receive mental health treatment in prison.[2] The court later denied his motions for new trial and for sentence modification, noting that he was continuing to progress in prison. He appeals, claiming his sentence was too harsh and should have included alternative forms of punishment.

Byron's 20-year sentence was within the statutory limit for a conviction for voluntary manslaughter.[3] "This court is without authority to review sentences within the statutory range, and any question as to excessiveness should be addressed to the sentence review panel." (Punctuation and footnote omitted.) *Gooch v. State*.[4] This includes sentences on verdicts of guilty but mentally ill. *Wilburn v. State*.[5] The trial court is not bound to honor requests for alternative punishments to account for the defendant's mental disorder. See *Snyder v. State*.[6] We discern no grounds for reversal.

*Judgment affirmed. Mikell, J., concurs. Barnes, J., concurs fully and specially.*

BARNES, Judge, concurring fully and specially.

---

[1] See OCGA § 16-5-2 (b) (person convicted of voluntary manslaughter may be sentenced up to 20 years).

[2] See OCGA § 17-7-131 (g) (2) (mentally-ill convict to receive mental-health treatment as psychiatrically indicated).

[3] OCGA § 16-5-2 (b).

[4] *Gooch v. State*, 249 Ga. App. 643, 648 (6) (549 SE2d 724) (2001).

[5] *Wilburn v. State*, 223 Ga. App. 476, 477-478 (2) (477 SE2d 909) (1996).

[6] *Snyder v. State*, 201 Ga. App. 66, 70-71 (10) (410 SE2d 173) (1991).

While I concur fully with all that is said in the majority's opinion, I write specially only to add my comments on the two-fold tragedy in this case — the senseless death of a twelve-year-old child, and the lack of adequate treatment for the seriously mentally ill fourteen-year-old who killed him.

Byron's background, while certainly tragic, speaks more of missed opportunities for intervention and systemic deficiencies in the state's health care for foster children. Byron was raised by a schizophrenic mother, who often was unable to care for her children because of frequent psychotic breaks. He came into the custody of the Department of Family and Children Services when he was nine. His intake sheet noted that "[Byron] has serious behavior problems. He has been bounced back and forth from relative to relative. Child has been in and out of counseling with removal too fast to do much good." Early on he exhibited severe behavioral problems including setting fires, defecating in his clothes, and stealing. On more than one occasion, he doused himself in alcohol and set himself on fire because he wanted to die. He reported hearing evil voices and feeling that demons were after him. A psychiatric evaluation performed when he was nine found that Byron had problems with depression and he was treated with an antidepressant and medications for attention deficit disorder. The doctor also noted that Byron had difficulty responding appropriately in complex social situations and "would likely misinterpret events around him." During this time he received intermittent counseling.

Another psychiatric evaluation performed approximately two years later revealed that Byron "complained of auditory hallucinations intermittently in the past with voices 'calling my name'; seeing shadows at night and 'figments' of people coming toward him." It also reflected that Byron was treated for ADD with up to 80 milligrams of Ritalin with poor response. The psychologist noted that Byron's symptoms could reflect the emergence of a major mental illness.

Byron was removed from his longest foster home placement when he was 12, after other foster kids became afraid of him because of his hallucinations, and his behavior problems, which had escalated. One of the other foster children testified that Byron would wake up screaming, crying, and afraid because he saw things and heard voices. He said that Byron would often hear voices in the daytime as well, and would run home from school when he heard voices because he thought they were "getting close upon us." The child said that Byron was ostracized by other children at school, and was an outcast because the children knew that Byron heard voices. During this time, the parental rights of Byron's mother were terminated.

Following his removal from his foster home, Byron spent three months in boot camp, followed by five months detention at a regional youth detention center, a month classified as a runaway, and then four months in YDC. His final placement was in a group home, and at the time of the crime, he was a runaway. His last case review recommended a therapeutic placement for Byron and further evaluation for medication.

An expert testified that Byron had exhibited several symptoms consistent with early onset schizophrenia, including lack of affect, decompensation, in which a schizophrenic's logical thought processes crumble under stress, nightmares, uncontrollable fear, and hostility. He noted that Byron's diagnosis of attention deficit was "oversimplistic" given Byron's unresponsiveness to the extremely high doses of medication he was given. The expert further testified that minorities are often not adequately diagnosed with respect to mental illness, and rather than a major mental illness, their behavior is viewed as "a behavioral problem of some type, a conduct disorder or an antisocial personality disorder."

He testified that along with medication, Byron needed a "very highly structured regimen of mental health treatment in a residential center where there's various kinds of occupational therapy, recreational therapy, group therapies, and then a strict behavioral system."

While clearly Byron should not be relieved from criminal responsibility because of his obvious mental illness, and certainly a verdict of guilty but mentally ill is authorized, I cannot but wonder if, in these circumstances, earlier intervention and greater vigilance in correctly recognizing and diagnosing Byron's serious mental disorder, could have saved the life of the victim.

Although Byron was sentenced to serve his time in prison rather than in a therapeutic environment, Georgia law requires that "[he] shall be further evaluated and then treated, within the limits of state funds appropriated therefor, in such manner as is psychiatrically indicated for his mental illness." OCGA § 17-7-131 (g) (2). Moreover,

[if] at any time following [Byron's] transfer to a penal facility it is determined that a transfer to the Department of Human Resources is psychiatrically indicated for his mental illness or mental retardation, then the defendant shall be transferred to the Department of Human Resources pursuant to procedures set forth in regulations of the Department of Corrections and the Department of Human Resources.

OCGA § 17-7-131 (g) (3). And, if hospitalization is warranted after

further evaluation, Byron should be transferred to a mental health facility for treatment. OCGA § 17-7-131 (g) (4).

DECIDED SEPTEMBER 13, 2004.

*Carl P. Greenberg*, for appellant.
*Paul L. Howard, Jr., District Attorney, Sharla D. Jackson, Anne E. Green, Assistant District Attorneys*, for appellee.